UNITED STATES, Appellee,

v.

Specialist Four William J. MASUCK, SSN 263–51–0879, United States Army, Appellant.

CM 442092.

U. S. Army Court of Military Review.

10 Dec. 1982.

---

Colonel Edward S. Adamkewicz, Jr, JAGC, Major Raymond C. Ruppert, JAGC, Captain Dennis E. Brower, JAGC, and Captain Warren G. Foote, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Thomas E. Booth, JAGC, and Captain Richard G. Mann, Jr, JAGC, were on the pleadings for appellee.

Before FULTON, COHEN and NAUGHTON, Appellate Military Judges.

### OPINION OF THE COURT

NAUGHTON, Judge:

On 13 January 1982 the appellant was tried by a military judge sitting as a general court-martial at Fort Carson, Colorado. In accordance with his pleas, he was convicted of five specifications of uttering a false check with intent to defraud and five specifications of forgery, violations of Article 123, Uniform Code of Military Justice, 10 U.S.C. § 923 (1976). The convening authority approved the adjudged sentence of reduction to the grade of Private E–1 and a bad-conduct discharge.

██ Prior to entering his pleas, the appellant moved to have the military judge consider the specifications of uttering a false check as being multiplicious for sentencing purposes with the specifications relating to the check forgeries. Appellant now asserts that the military judge's denial of that motion was error. We do not agree and find appellant's assertion to be without merit. *See United States v. Gibbons,* 11 U.S.C.M.A. 246, 29 C.M.R. 62 (1960).

The appellant next asserts that the court-martial lacked subject matter jurisdiction over the check forgery specifications. Under the particular facts of this case, we find that the exercise of jurisdiction was warranted and affirm.

The facts are not in dispute. On or about 1 September 1981, Sergeant (SGT) Lindsy, a member of appellant's company, gave the key to his off-post apartment located in Colorado Springs, Colorado, to the appellant. The appellant was to watch over the apartment and water the plants belonging to SGT Lindsy while Lindsy was in Germany participating in the 1981 Return of Force to Germany (REFORGER) exercise. During a visit to the apartment on or about 10 September 1981, appellant noticed a checkbook belonging to a SGT Ellis laying on a coffee table. SGT Ellis was a roommate of SGT Lindsy and was also in Germany participating in the REFORGER exercise. The appellant also found a piece of paper bearing SGT Ellis' signature in the apartment. After practicing SGT Ellis' signature several times, the appellant wrote a check, payable to himself, forging the signature of SGT Ellis on the check. Appellant then returned to post and cashed this check made out in the amount of $200.00 at the Fort Carson National Bank, Fort Carson, Colorado. Within a week, the appellant returned to the off-post apartment to look for additional checks belonging to SGT Ellis. After locating additional checks in a briefcase belonging to SGT Ellis, the appellant forged four more checks payable to himself and bearing the signature of SGT Ellis. Appellant subsequently uttered these checks for a total of $850.00 at on-post branches of the Fort Carson National Bank,

██ Prior to *United States v. Trottier,* 9 M.J. 337 (CMA 1980) the Court of Military Appeals held that off-post forgeries are not subject to military jurisdiction. *See United States v. Vick,* 4 M.J. 235 (CMA 1978) (summary disposition); *United States v. Sims,* 2 M.J. 109 (CMA 1977); *United States v. Uhlman,* 1 M.J. 419 (CMA 1976). The Court has also rejected the proposition that subject matter jurisdiction over an off-post offense can be "predicated solely upon the military status of both the wrongdoer and the victim." *United States v. Hedlund,* 2 M.J. 11, 14 (CMA 1976). Court-martial jurisdiction turns on the "service connection" of the offense. *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). Since *Trottier,* a more flexible and

less restrictive view of the meaning of that term, as enunciated in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971) and its predecessor, *O'Callahan v. Parker, supra,* has begun to emerge. *See United States v. Johnson,* 14 M.J. 850 (ACMR 1982) (jurisdiction existed over off-post wrongful appropriation of fellow soldier's automobile); *United States v. Shea,* 14 M.J. 882 (1982) (jurisdiction warranted over off-post forgeries involving use of fellow service member's oil company credit card). While the *Relford* criteria remain intact as the analytical model to be used in determining subject matter court-martial jurisdiction, these criteria are to be carefully weighed on a case by case basis to resolve the fundamental question, "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591, 610 (1975).

■ We conclude that the military interests in appellant's off-post forgeries of checks belonging to a fellow soldier outweigh those of the civilian community. The victim was a member of the same unit as appellant. The appellant was apparently acquainted with the victim through military duties. This relationship provided the appellant with the knowledge that the victim would be away from his place of residence in the civilian community. *Cf. United States v. Whatley,* 5 M.J. 39 (CMA 1978). Appellant abused the trust of a fellow soldier to care for his property while he was away from his residence participating in a major military exercise in an overseas area. Such conduct as appellant's is detrimental to the maintenance of morale, unit cohesion, and the fighting effectiveness of an Army combat unit. Finally, by operation of commercial law, the appellant's criminal conduct also victimized an on-post banking facility.* Because we perceive appellant's forgeries had no significant impact on the civilian community, we conclude the civilian interest in these offenses was negligible. Under these circumstances we believe the military's distinct interest in its personnel and their property supports the exercise of court-martial jurisdiction over the off-post forgeries.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge FULTON and Judge COHEN concur.

---

* While we recognize that the bank is a civilian community entity, a unique relationship exists between the Army and its on-post banks. *See* Army Regulation 210–135, 15 August 1978.